(111 So. 58)

No. 26844.

**LOUISIANA STATE BOARD OF MEDICAL EXAMINERS v. FIFE et al.***

(Nov. 29, 1926.   Rehearing Denied Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Physicians and surgeons** ⚖═5(1)—**Chiropractor practices medicine and so must obtain certificate on diploma and examination (Act No. 56 of 1914, §§ 1, 2, 13, 21, as amended and re-enacted by Act No. 54 of 1918, §§ 1, 2, 9, 12).**

In view of Act No. 56 of 1914, §§ 13, 21, as amended and re-enacted by Act No. 54, of 1918, §§ 9, 12, a chiropractor, though not using drugs or surgical instruments, practices medicine, and so, under sections 1, 2, as amended and re-enacted by sections 1, 2, must first obtain certificate on diploma and examination.

2. **Physicians and surgeons** ⚖═1—**Right to practice medicine is one granted on condition.**

No one has a natural or absolute right to practice medicine or surgery, but the right is one granted on condition.

3. **Physicians and surgeons** ⚖═1—**State can regulate practice of medicine by prescribing qualification and requiring certificate.**

Though state cannot prohibit practice of medicine and surgery, it may regulate it within reasonable bounds, by defining qualifications of practitioner and requiring certificate showing possession thereof.

4. **Constitutional law** ⚖═287—**Physicians and surgeons** ⚖═2—**Chiropractor is not deprived of liberty and property without due process of law because required to qualify in materia medica and surgery (Act No. 56 of 1914, § 2, as amended and re-enacted by Act No. 54 of 1918, § 2).**

A chiropractor is not deprived of liberty ·and property without due process of law, because Act No. 56 of 1914, § 2, as amended and re-enacted by Act No. 54 of 1918, § 2, requires him, like others practicing medicine, to first qualify as to materia medica and surgery, though they are not used in the chiropractic system, they bearing a relation to the practice of medicine as a general science, and the Legislature not being bound to recognize every school of medicine, and deal with it as such.

*Judgment affirmed 47 S. Ct. ——, 71 L. Ed. ——.

5. **Constitutional law** ⚖═230(2)—**Chiropractor is not deprived of equal protection of law because not exempt like some others from qualifying in materia medica and surgery (Act No. 56 of 1914, as amended and re-enacted by Act No. 54 of 1918)..**

The Legislature having reasonable discretion as to whether a particular school of medicine should be recognized and special provision made for it, a chiropractor is not deprived of equal protection of laws by being unjustly discriminated against, because he is not exempt as are osteopaths and some others, by Act No. 56 of 1914, as amended and re-enacted by Act No. 54 of 1918, from qualifying in materia medica and surgery for practice.

Appeal from Civil District Court, Parish of Orleans; William H. Byrnes, Jr., Judge.

Suit by the Louisiana State Board of Medical Examiners against Joseph B. Fife and another for injunction and fine. From an adverse judgment, defendants appeal. Affirmed.

Donelson Caffery and Anna C. McCay, both of New Orleans, for appellants.

T. S. Walmsley, Eugene D. Saunders, and G. B. Harrison, Jr., all of New Orleans, for appellee.

OVERTON, J. Act 56 of 1914, as amended and re-enacted, in part, by Act 54 of 1918, regulates the practice of medicine in this state. Section 1 of the latter act amends and re-enacts section 1 of the former, and reads as follows:

"That from and after the promulgation of this act, no person shall practice medicine in any of its departments within the state of Louisiana, unless such person shall possess the necessary qualifications and requirements of this act."

Section 2 of the Act of 1918 amends and re-enacts section 2 of the Act of 1914, and reads as follows:

"That after the promulgation of this act, any person before entering upon the practice of medicine in any of its branches shall present to one of the boards of medical examiners as herein constituted, a diploma from a college in good standing, of any sect teaching med-

icine or the healing art, and shall stand a satisfactory examination before the board upon the following branches, to wit: Anatomy, physiology, chemistry, physical diagnosis, pathology and bacteriology, hygiene, surgery, theory and practice of medicine, materia medica, obstetrics and gynecology. The person shall also satisfy the board that he or she is twenty-one years of age, a citizen of the United States, of good moral character, and possesses a fair education. * * * "

Section 9 of the Act of 1918 amends and re-enacts section 13 of the Act of 1914. The section, as amended and re-enacted, reads, in part, as follows:

"That the term practice of medicine, surgery, midwifery as used in this act is hereby defined to mean holding one's self to the public as being engaged within this state in the business of diagnosing, treating, curing, or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being other than himself; whether by the use of any drug, instrument or force, whether physical or psychic, or of whatever nature, or any other agency or means; or who shall examine any such person or material from such person for such purpose; whether such drug, instrument, force, or other agency or means is to be applied or used by the patient or by any other person, or be for compensation of any kind or be gratuitous; or attending a woman in childbirth without the aid of a licensed physician, surgeon or midwife; or using any other title than optician, to indicate that one is engaged in the business of refracting or fitting glasses to the human eye."

Section 21 of the Act of 1914 is amended and re-enacted by section 12 of the Act of 1918 so as to read:

"That this law shall not apply to the giving of family remedies in cases of emergency; or to legally licensed dentists, pharmacists, osteopaths, practicing according to existing laws; or to any one attending in an emergency a woman in childbirth; or to anyone serving full time without salary or professional fees on the resident medical staff of any legally incorporated municipal or state hospital or asylum; nor to prohibit the practice of Christian Science or religious rules or ceremonies as a form of religious worship, devotion or healing, providing that the person administering or making use of, or assisting or prescribing such, rely on faith and prayer alone, and do not prescribe or administer drugs or medicine nor perform surgical or physical operations nor assume the title of, or hold themselves out to be, physicians or surgeons."

The plaintiff herein reached the conclusion that defendants were practicing medicine in the city of New Orleans without having obtained a certificate authorizing them to practice it, and therefore were practicing medicine in violation of the act quoted, in part, above. Having reached that conclusion, plaintiff instituted the present suit, alleging that defendants were thus engaged in the practice of medicine in New Orleans, and praying that a writ of injunction issue and be perpetuated, restraining them from pursuing that calling until they procure the required certificate or license, and that they be condemned to pay the penalty of $100 and also $50 attorney's fees, provided by law.

[1] If defendants were practicing medicine during the period set out in the petition herein, the evidence leaves no doubt that they were doing so without a license or certificate, issued by plaintiff, as required by law, authorizing them to do so. As to whether or not they were practicing medicine, it may be said that the evidence leaves no doubt that, during the time mentioned, they were treating disease and other bodily infirmities. They were not treating these by using drugs of any description, nor were they using in their practice surgical instruments of any kind. If it be essential to constitute the practice of medicine that one or the other of these be used, then we think it clear that defendants, as contended by them, were not practicing medicine. But the practice of medicine has a broader signification than that. It may consist in the application of physical force to parts of the body for the purpose of curing disease or relieving bodily ailments, and the Legislature has, in part, so defined it. Section 9 of Act 54 of 1918, quoted supra. Defendants were engaged, it

appears, in using physical force, applied with the hands only, in treating disease. They were, in reality, practicing the system, known as chiropractic, which, as defined substantially in Louisiana State Board of Medical Examiners v. Cronk, 157 La. 321, 102 So. 415, is a system of adjusting the subluxated or slightly displaced vertebræ of the spinal column, by hand, for the restoration of health. See, also, "Chiropractics," 11 C. J. p. 758. To practice chiropractic is to practice medicine. Board of Medical Examiners v. Cronk, supra; Commonwealth v. Zimmerman, 221 Mass. 184, 108 N. E. 893, Ann. Cas. 1916A, 858; State v. Johnson, 84 Kan. 411, 114 P. 390, 41 L. R. A. (N. S.) 539. Since defendants were practicing medicine within the meaning of the statute, and since they were doing so without the required certificate, they were practicing in violation of the statute.

But defendants contend that the statute, as amended, is unconstitutional. Their contention is that to require them to stand an examination in surgery and materia medica, and perhaps in other things, is to require them to be qualified in subjects for which they and those who practice chiropractic have no need, and which bear no relation to that system, and, since the effect of these requirements is to virtually suppress the practice of chiropractic in this state, they plead that the statute deprives them of liberty and property without due process of law, in violation of the Constitutions of this state and of the United States.

[2-4] At the outset it may be observed that no person has a natural or absolute right to practice medicine or surgery. It is a right granted upon condition. Allopathic State Board of Medical Examiners v. Fowler, 50 La. Ann. 1358, 1374, 24 So. 809; Lewis v. State, 69 Tex. Cr. R. 593, 155 S. W. 523. And, although a state cannot prohibit the practice of medicine and surgery, and would hardly undertake to do such a thing, still it is well established that, under its police power, it may regulate, within reasonable bounds, for the protection of the public health, the practice of either, by defining the qualifications which one must possess before being admitted to practice the same, and, to make these regulations effective, to require the one intending to engage in the practice, to possess, before engaging therein, a certificate from the proper authority showing that he possesses the required qualifications. Hawker v. New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002; Dent v. West Virginia, 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623; Louisiana State Board of Medical Examiners v. Cronk, supra; Allopathic State Board of Medical Examiners v. Fowler, supra. The Legislature, however, in defining these requirements, cannot prescribe, as a condition to the right to practice, knowledge of a subject which bears no relation to the practice of medicine. Dent v. West Virginia, supra. But this does not mean that the Legislature, in exercising its power to prescribe the qualifications, which, in its judgment, one should possess to practice medicine, must make requirements such as to provide for every school of medicine that may exist, by requiring of those belonging to each particular school a knowledge only of those subjects, which the theory of healing, advocated and put in operation by each school, requires. Were it otherwise, the Legislature would be greatly hampered in the exercise of its power to protect the general health and the public from imposition and fraud. Every group of men who might get together and evolve some system, designed to restore health, would be entitled to recognition, and all that could be required of them would be evidence of good character and a knowledge of such subjects, as their particular school seemed to require, although the Legislature might deem with reason a knowledge of such subjects wholly insufficient to entitle any one to treat the sick. However, the Legislature is not hampered by any such restriction in the exercise

of its power to protect the public health. As truly said in Allopathic State Board of Medical Examiners v. Fowler, supra, 50 La. Ann. 1358, 1374, 1375, 24 So. 809, 816:

"We know of no constitutional right given to particular persons who, entertaining peculiar theories of medicine, group themselves together and call themselves a special school of medicine, under a selected name, to be recognized as and dealt with as such. An indefinite number of schools of medicine might claim recognition with no fixed ascertained standard to pass upon their pretensions."

Our conclusion is that plaintiffs have no constitutional grounds to complain, by reason of the fact that, before being permitted to treat the sick, they must make it appear, in the manner prescribed by law, that they have an adequate knowledge of materia medica and surgery, and of the remaining subjects, required by section 2 of Act 56 of 1914, as amended by section 2 of Act 54 of 1918, quoted above. While materia medica and surgery are not used in the chiropractic system, still they, as well as the other subjects required by the act, as amended, bear a relation to the practice of medicine as a general science and that, in view of the fact that the Legislature is not bound to recognize every school of medicine, and deal with it as such, is sufficient to prevent the act from being unconstitutional.

[5] Another contention of defendants is that the act, as amended, is violative of the Fourteenth Amendment to the Constitution of the United States, in that it denies them the equal protection of the laws, by unjustly discriminating against them. Defendants base this contention on the fact that the Legislature has withdrawn, or practically withdrawn, osteopaths and dentists from the operation of the Act of 1914, as amended, and has provided regulations for their admission to practice, as well as for the admission of chiropodists and trained nurses, different from those which it requires for the practice of medicine and surgery, not requiring of them a full course, or none at all, according to the needs of the calling, in materia medica, surgery, and other subjects, named in the Medical and Surgical Act cited, whereas it requires of those, by not excepting them from the operation of the act, who desire to practice the chiropractic system, a full course in materia medica and surgery, though, in practicing, they, in accordance with their school, would use neither surgery nor drugs.

Without going into detail, by stating the requirements for the admission of osteopaths, dentists, chiropodists, and trained nurses to practice, and granting for the purposes of this case that all who follow these callings may be considered as practicing medicine or surgery to a greater or lesser degree, it may be said that the requirements for admission to them are different from those prescribed by the Act of 1914, as amended, relating to the practice of medicine and surgery, and that there is no requirement, prescribed by the Legislature, requiring one who desires to follow any one of these callings to take a full course in materia medica or surgery before being admitted to pursue any one of them, and it may be safely assumed that the various boards admitting applicants do not require anything of the kind. Act 185 of 1908; Act 88 of 1900, and section 1 of Act 32 of 1894; Act 159 of 1916; Act 138 of 1912. Defendants do not complain that these exceptions, in favor of osteopaths, dentists, chiropodists, and trained nurses make the Act of 1914, as amended, unconstitutional, but their complaint is that the act is unconstitutional, because it discriminates against them by not granting them similar privileges, but requires them to take the full medical and surgical course. If the Legislature were called upon to recognize every school of medicine, and to deal with it as such, requiring nothing but what the system practiced by each school demands, there might be some force to defendants' contention, but, as we have held, the Legislature is not called upon to do so,

but has a reasonable discretion as to whether a particular school should be recognized and special provision made for it. Since the Legislature has such discretion, defendants cannot complain, on the ground of being unjustly discriminated against, because the Legislature has not deemed proper to recognize their school of medicine, and make special provision for those desiring to practice that system, by prescribing a course of study in accord with the theories which it holds for restoring health. See Allopathic State Board of Medical Examiners v. Fowler, supra; Johnson v. State (Tex. Civ. App.) 267 S. W. 1057; Singh v. State, 66 Tex Cr. R. 156, 146 S. W. 891; State v. Morrison, 98 W. Va. 289, 127 S. E. 75.

Our conclusion is that on none of the grounds urged is the act complained of unconstitutional. If defendants wish to treat the sick in accordance with the theories held by them, they must comply first with the Act of 1914, as amended. So thought the trial judge, and we think that his judgment, perpetuating the writ of injunction, and awarding the penalty and attorney's fees prayed for, is correct.

The judgment appealed from is therefore affirmed.