55 So.2d 761

**LOUISIANA STATE BOARD OF MEDI-
CAL EXAMINERS v. BEATTY et al.**

No. 40008.

Nov. 5, 1951.

Rehearing Denied Dec. 10, 1951.

R. A. Dowling, Anna Andollina, New Orleans (E. B. Simmons, San Antonio, Tex., Hugh E Chance, Davenport, Iowa, of counsel), for defendants.

Joseph Rosenberg, New Orleans, for amicus curiae.

Milling, Godchaux, Saal & Saunders, Eugene D. Saunders, Gordon O. Ewin, Wilkinson & Wilkinson and James Wilkinson, III, all of New Orleans, for appellee.

McCALEB, Justice.

The appellants in these consolidated cases are chiropractors practicing in the City of New Orleans and hold themselves out to the public as being skilled in the science of healing the sick by manual pressure applied to the body of the patient and the use of heat lamps and electric massage. Having been adjudged by the district court to be pursuing, without license, the practice of medicine, as defined by the Medical Practice Act, Act 56 of 1914, as amended and reenacted in part by Act 54 of 1918,[1] and enjoined from doing so, appellants seek a reversal of the judgment contending that they are not practicing medicine and that, if they are, they do not require a license because Act 56 of 1914, as amended, is unconstitutional.

At the onset of a discussion of the propositions submitted by appellants, it is pertinent to state that this court has heretofore ruled twice that the practice of chiropractice is that of medicine, as defined by Section 13 of Act 56 of 1914 and Section 9 of Act 54 of 1918 and that the statute is impregnable to the charge that it violates the equal protection clause of the Fourteenth Amendment of the federal Constitution or that it denies to chiropractors due process. See Louisiana State Board of Medical Examiners v. Cronk, 157 La. 321, 102 So. 415 and Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed 47 S. Ct. 590, 274 U.S. 720, 721, 71 L.Ed. 1324.

Counsel for appellants do not directly challenge the correctness of the opinions in the Cronk and Fife cases and they readily acknowledge that appellants are engaged in the identical type of therapy practiced by Cronk and the Fife Brothers. However, they seek to evade the ostensible controlling effect of those adjudications by professing that the extensive concept of the practice of medicine as defined by the Medical Practice Act has been markedly curtailed since the Cronk and Fife cases were decided (in 1924 and 1926 respectively) and that, specifically, the Legislature, by Act 91 of 1932, LSA–RS 37:1111, which defines the practice of osteopathy, has modified the general definition to exclude therefrom chiropractors and others who treat by the application of physical pressure.

We are unable to perceive merit in this proposition. Act 56 of 1914, as amended, is a broad and all inclusive statute covering the entire field of the healing art in this State and the practice of medicine as defined therein embraces every known

---

1. The statute has been redrafted and incorporated without substantial change as

part of the Revised Statutes. See LSA–R.S. 37:1261–1313.

type or method of treatment for the relief or cure of ailments or disease. The practice of osteopathy, dentistry and optometry, like that of chiropractic, falls within the scope of the Act and osteopaths, dentists and optometrists would be amenable to its provisions but for the exemption which the Legislature has seen fit to grant them when they are legally licensed to practice in their respective fields. Hence, by specially defining the practice of osteopathy in Act 91 of 1932, the Legislature neither intended to, nor did it, contract the scope of the definition of the practice of medicine so as to exclude therefrom the type of healing practiced by appellants.

Although it appears that all questions relative to the asserted unconstitutionality of the Medical Practice Act, because of the denial of due process and equal protection of the laws, have been fully answered in the opinion in Louisiana State Board of Medical Examiners v. Fife, supra, counsel for appellants earnestly contend that they were not and, with commendable industry, have favored us with a voluminous brief in which they attempt to demonstrate the invalidity of the legislation on the following grounds:

(a) That it discriminates in favor of exempted groups, i. e., legally licensed osteopaths, dentists, chiropodists and pharmacists "practicing according to existing laws". (Section 21, Act 56 of 1914, as amended by Section 12 of Act 54 of 1918).

(b) That it denies equal protection because it confers arbitrary powers on the Medical Board.

(c) That it denies equal protection because of educational requirements arbitrarily imposed by the Medical Board, and

(d) That it takes property rights without due process of law.

The contention that the Act is unconstitutional because it discriminates in favor of legally licensed osteopaths, dentists, etc. has been determined adversely to appellants in the Fife case, where it was held that the exemption was not a discrimination against chiropractors. But counsel say that they are making a novel complaint when they insist that the Act discriminates in favor of the excepted group, rather than against appellants.

It strikes us that this is the identical complaint stated in a different way. Furthermore, we have not the slightest doubt as to the soundness of the ruling in the Fife case that the exemptions of certain classes of persons engaged in healing by use of a particular method, such as osteopathy, does not render the statute unconstitutional.

There can be no denial that the regulation of the practice of medicine is within the police power of the State. Allopathic State Board of Medical Examiners v. Fowler, 50 La.Ann. 1358, 24 So. 809; Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. The Legislature in its wisdom also has the right to

exempt certain persons or classes of persons from the provisions of a law provided that there is no arbitrary or unreasonable discrimination. And valid ground for such an exemption in a statute will always be presumed, it being settled that a statutory discrimination will not be set aside as a denial of the equal protection of the laws "if any state of facts reasonably may be conceived to justify it". See Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 and State v. Trahan (on rehearing), 214 La. 100, 112, 36 So.2d 652, 656. There is no showing whatever in this case to overcome the presumption that the Legislature had just and reasonable grounds for exempting licensed osteopaths, dentists and optometrists from the provisions of the Medical Practice Act. Forsooth, the rationale of appellants' argument is that they should have been exempted too because their theory of healing, while not the same as osteopathy, is akin thereto in that the main therapeutic measure is physical pressure.

Likewise without substance is the claim that the Act confers arbitrary powers on the Medical Board and thus denies equal protection. The alleged arbitrary powers of the Board are said to be contained in Section 2 of the Act declaring that, before any person may enter upon the practice of medicine, he shall present to one of the Boards of Medical Examiners "a diploma from a college in good standing, of any sect teaching medicine or the healing art, and shall stand a satisfactory examination * * *". It is asserted that, since the Medical Board is given the right of determining what is or what is not "a college in good standing", the statute vests in it arbitrary power which may be, and actually has been, exercised in the interest of a favored few.

The identical contention of appellants was rejected by the Supreme Court of the United States in Graves v. Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331. The provision that the applicant present a diploma from a college in good standing does not clothe the Board with an arbitrary power but only with the right to exercise discretion; what is or what is not a college in good standing is a matter for determination by the Board after investigation but, should it refuse an examination to an applicant presenting a diploma from a reputable medical school, its action would then be regarded as arbitrary and subject to coercion by mandamus. The possibility of arbitrary action, where discretion is vested in an administrative body, does not render the statute vulnerable to the charge that it denies an equal protection of the laws. 12 Am.Jur. "Constitutional Law" Sec. 494, Engel v. O'Malley, 219 U.S. 128, 31 S.Ct. 190, 55 L.Ed. 128.[2]

---

2. Compare Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 and similar authorities relied on by appellants, holding that statutes conferring absolute

█ It is next argued that the Act denies equal protection because the Medical Board has unreasonably imposed an educational requirement that an applicant for examination produce a diploma from a college recognized by the American Medical Association. This point is said to be founded on the testimony of Dr. Roy B. Harrison, Secretary of the Board of Medical Examiners. While we do not understand that Dr. Harrison stated that only applicants with diplomas from colleges recognized by the American Medical Association will be favorably considered by the Board, it would make no difference, insofar as the constitutionality of the Act is concerned, whether the Board has taken such a stand or not.[3] If the Board has made an arbitrary ruling as to the colleges which it recognizes as being in good standing, the remedy of the injured party is to apply for a mandamus.

█ Finally, counsel assert that the Act takes from appellants their constitutional

power upon administrative bodies to determine the class or persons affected by a law, without prescribing a guide or standard whereby discretion may be measured, deny equal protection when arbitrarily administered. This type of statute is unconstitutional for another reason, viz., the unlawful delegation of legislative power to executive officers. See 11 Am.Jur. "Constitutional Law" Secs. 214–244.

right to practice their profession without due process of law. In making this contention, counsel admit that the State has the right to regulate the practice of medicine but they say that the regulations imposed by the Act and its administrators are arbitrary and unreasonable and, therefore, strip them of their property right to practice chiropractic.

That this statute does not violate the due process clause of the state and federal Constitutions has already been determined by this Court and the Supreme Court of the United States in the Fife case. In truth, the argument now made on this score is not in reality grounded on the due process clause but is a rehash of the same contention made under the asserted denial of equal protection of the laws.

The judgments appealed from are affirmed.

HAWTHORNE, J., absent.

3. It is well settled that a law cannot be held unconstitutional, when its just interpretation is consonant with the Constitution, because it is being unfaithfully administered by those charged with its execution. 12 Am.Jur. "Constitutional Law" Sec. 566, pages 257, 258; Reagan v. Farmers Loan & T. Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014.