STATE OF CONNECTICUT *v.* JOSEPH L. TABORSKY

SUPERIOR COURT    HARTFORD COUNTY    FILE No. 21665

STATE OF CONNECTICUT *v.* ARTHUR CULOMBE

SUPERIOR COURT    HARTFORD COUNTY    FILE No. 21666

Memorandum filed April 1, 1957.

*Albert S. Bill,* of Hartford, State's Attorney.

*Wallace R. Burke* and *John J. Daly,* special public defenders, both of Hartford, for the defendant Taborsky.

*Thomas F. McDonough* and *Alexander A. Goldfarb,* special public defenders, both of Hartford, for the defendant Culombe.

BORDON, J. The defendants' motions for a change of venue are supported by evidence contemplated to show a liability to prejudice in Hartford County due to unusual publicity given the cases in the newspapers, on the radio and through television. There was, however, no evidence before the court indicating prejudicial results from such publicity. Many witnesses testified to aroused public opinion, but no credible evidence was presented that such opinion had crystalized into unwavering conclusions precluding a fair trial. Nor was there any evidence of expressed or vigorous public sentiment that such a trial could not be had in Hartford County. Few of the witnesses could be regarded as competent to interpret public opinion accurately, and most of them testified that mass discussions among citizens of the county indicated opinions that a fair trial could be had within the county.

Prior to the apprehension of the defendants, there had been a number of atrocious holdup killings which created fear and panic among many businessmen, particularly gasoline station operators, pack-

age store owners, and operators of small shops in outlying places. The newspapers exploited their journalistic license by dramatizing their stories, by calling the defendants "mad killers," and by showing pictures of the defendants and of places wherein alleged killings occurred. Undoubtedly such publicity had an impact on general public opinion and probably created indelible marks on many people who, prior to the apprehension of the defendants, regarded themselves as probable victims. But, despite the efficient publicity, it is doubtful that there are many people in the county who would be unwilling to accord the defendants a fair trial. So strongly is the American system of justice embedded in the minds of our citizens that outraged feelings usually give way to a desire for orderly procedure.

The right of the defendants to a change of venue is created by § 8794 of the General Statutes. This statute provides that a judge holding any term of the Superior Court may, upon motion, order any criminal case pending in such court to be transferred to the Superior Court in any other county. The defendants do not have an inherent right to a change of venue. The constitutional and statutory guarantees with which an accused is clothed do not include the right to a change of venue. The statute authorizing it leaves it to the discretion of the presiding judge without providing any reasons or causes which could control the exercise of such discretion and does not attempt to state the grounds upon which the court may make the order. The purpose of the statute is, obviously, to confer power on the presiding judge in the event he deems it necessary to further safeguard the rights of an accused. The burden of proof is, therefore, on the defendants to establish the reasons and need for a change as contained in their motions. *State* v. *Cianflone*, 98 Conn. 454, 461. The statute clearly de-

notes that such a motion is addressed to the sound discretion of the court and is not one of the fundamental rights accorded an accused charged with crime. *State* v. *Luria,* 100 Conn. 207, 209.

Perhaps the leading case in this state on the subject is that of *State* v. *Chapman,* 103 Conn. 453, 469. Chapman was accused of killing a police officer in New Britain. The newspapers gave the case wide publicity. The motion for change of venue was supported, as here, by considerable evidence tending to show a liability to local prejudice in Hartford County due to the unusual publicity given to the case, particularly in the newspapers. Chapman was a rather colorful criminal and the newspapers exploited, spiced, dramatized and colored their stories to attract the reading public. The trial court ruled that, in spite of the publicity given the case, a fair trial could be given the accused in Hartford County, and the Supreme Court sustained this ruling in these words (p. 470): "It is within the reasonable discretion of the trial court to grant a change of venue when it clearly appears that a fair and impartial trial cannot be had in the county where the venue is laid in the indictment. The burden of showing this is upon the mover of the change of venue. *Crocker* v. *Justices of the Superior Court,* [208 Mass. 162]; *Downs* v. *State,* 111 Md. 241 . . . ; *Burns* v. *Pennsylvania R. Co.,* 222 Pa. St. 406 . . . ; *People* v. *Pfanschmidt,* 262 Ill. 411, 440 . . . ."

Another important case in which this question was raised and pressed as a ground for appeal was that of *State* v. *Palko,* 122 Conn. 529, 537. In that case the accused was charged with killing a Bridgeport police officer, and he moved for a change of venue on the ground that there had been such wide publicity of a nature so derogatory to him that a fair trial by an impartial jury could not be had in Fairfield County. The Supreme Court held that

the "burden of showing this is upon the mover of the change of venue." The power to grant a change of venue is to be exercised with caution and rests in the court's sound discretion, which is final unless it appears clearly that it has exercised the discretion unreasonably. *State* v. *Chin Lung,* 106 Conn. 701, 717.

This question was more recently raised in the case of *State* v. *Rogers,* 143 Conn. 167, 171. The basis of the two motions for change of venue was the widespread publicity given the killing of Mrs. Kennedy while she was alone in a package store, and later, the publicity attending the defendant's statement to the police and to the coroner. The trial court denied the motion and this decision was sustained by the Supreme Court on the ground that the burden of showing that a fair and impartial trial could not be had in the county of origin is on the defendant, and that he must show more than that the crime received considerable publicity. He must demonstrate that the publicity was necessarily prejudicial to him and prevented his being accorded a fair and impartial trial. *State* v. *Rocco,* 109 Conn. 571, 572; *State* v. *Leopold,* 110 Conn. 55, 58.

There are some instances where a failure to grant a change of venue has been held to be error. In the case of *Shepherd* v. *Florida,* 341 U.S. 50, the United States Supreme Court ruled that the Florida trial court should have granted a change of venue and that the state Supreme Court should have overruled the trial court for failing to do so. In this case the accused were Negroes charged with rape of a white girl. The newspapers had falsely published that the accused had confessed, but no confessions were offered at the trial. The newspapers attributed the information to the sheriff, who failed to repudiate the story. The aroused public opinion caused by inflammatory newspaper articles was mainly due to

race prejudice, and a claim by the state (p. 53) that "inflamed public sentiment was against the crime with which the defendants were charged rather than defendants' race" was more charitable than realistic. There is no need to emphasize that no such prejudice could possibly exist in Hartford County.

In the case of *United States* v. *Florio,* 13 F.R.D. 296, Judge Kaufman granted a change of venue because he found it impossible to give the defendant a fair trial in New York due to inflammatory publicity. The federal rule differs from our statute in that the court is virtually ordered to transfer where the court is satisfied that there exists so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in the district in which he is first charged. The trial judge found that such prejudice existed. *United States* v. *Parr,* 17 F.R.D. 512; *Cox* v. *State,* 90 Tex. Crim. 106; *State* v. *Crafton,* 89 Iowa 109; *Gallagher* v. *State,* 40 Tex. Crim. 296.

In the case of *Delaney* v. *United States,* 199 F.2d 107, the court ruled that failure to grant a postponement of the trial was error, because congressional investigation of the affairs of the defendant was in progress at that time and the rights of the defendant prejudiced. This ruling apparently fitted the circumstances of the case, but is not authority for defendant's claims because no motion for change of venue was filed.

It is fair to say that the preponderance of judicial opinion on the subject calls for a finding by the trial court that public prejudice would preclude a fair trial. Intemperate expressions of a mass of people following inflammatory publicity are insufficient to show the impossibility of a fair trial in a county the size of Hartford County. 56 Am. Jur. 70, § 70; *Elias* v. *Territory,* 9 Ariz. 1; *State* v. *Schneider,* 158

Wash. 504. Proof that derogatory articles were published in some of the cities of the county and publicized throughout the county by radio and television is not proof that a fair trial cannot be held within the county, or that the county as a whole is so prejudiced that a fair trial cannot be had. *Pennsylvania R. Co.* v. *Reading*, 254 Pa. 110; *State* v. *Gordon*, 32 N.D. 31.

From the evidence presented, the court is of the opinion that a jury can be selected in Hartford County that would be fair and impartial, and that the defendants will get a fair trial. With the peremptory challenges enjoyed by each defendant under our law and with the additional safeguards assured them by a fair and impartial presiding judge, during the selection of a jury, the defendants will be doubly guaranteed of a fair trial.

The motions for a change of venue are denied.